IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN J. COREIA,                          :       Case No. 4:CV-04-2425
                    Plaintiff            :
                                         :       Judge Jones
          v                              :
                                         :
SCHUYLKILL COUNTY AREA                   :
VOCATIONAL-TECHNICAL                     :
SCHOOL AUTHORITY, ET AL.                 :
                    Defendants           :

## MEMORANDUM AND ORDER

September 16, 2005

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Motion to Dismiss Plaintiff's Amended

Complaint ("the Motion") (doc. 24) filed by Defendants Schuylkill County Area

Vocational-Technical School Authority, James Monaghan, Gerald Achenbach, and

James S. Fogarty (collectively "Defendants") pursuant to Federal Rule of Civil

Procedure 12(b)(6) on June 30, 2005.

For the reasons that follow, Defendants' Motion will be granted in part and

denied in part.

**PROCEDURAL HISTORY:**

The plaintiff, John J. Coreia ("Plaintiff" or "Coreia") initiated this action by

filing a complaint in the United States District Court for the Middle District of

Pennsylvania on November 5, 2004 pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1342, 28 U.S.C. § 1343, 42 U.S.C. § 1983, and invoking the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c).  On January 24, 2005 Defendants filed a Motion to Dismiss Plaintiff's complaint, which was briefed by the parties.  On March 24, 2005, we issued an Order directing Plaintiff to file an amended complaint as Plaintiff attached factual allegations to his submission that were not contained within the four corners of his complaint.  (See Rec. Doc. 19).

Defendants filed the instant Motion on June 30, 2005, which has been briefed by the parties.  The Motion is therefore ripe for disposition.

**STANDARD OF REVIEW:**

In considering a motion to dismiss, a court must accept the veracity of a plaintiff's allegations.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990).  In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims."  Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

2

which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957);

<u>see</u> <u>also</u> <u>District Council 47 v. Bradley</u>, 795 F.2d 310 (3d Cir. 1986).

## FACTUAL BACKGROUND:

Plaintiff alleges in his amended complaint that he was employed by

Defendant Schuylkill County Area Vocation-Technical School Authority

("VOTEC") as a machine trades technology teacher and was forced to resign

effective August 21, 2003.  (Am. Compl. ¶ 11).  His active contracted employment

with Defendant VOTEC ended on or about June 9, 2003.  <u>Id.</u>  On or about August

15, 2003 Plaintiff was approached by Defendant James Monaghan ("Monaghan"),

Director of Education at Schuylkill County VOTEC and Plaintiff's supervisor, who

stated that he was going to send in the application for Plaintiff to get his emergency

teaching certificate ("ETC").  <u>Id.</u> ¶ 12.  Plaintiff asserts that he then gave

Monaghan the signed application and money order, assuming that Monaghan was

going to mail the items.  <u>Id.</u>

On or about August 18, 2003, Monaghan told Plaintiff that his application

had been denied and gave Plaintiff his application and money back.  <u>Id.</u> ¶ 13.

"Monaghan never mentioned to Plaintiff that he was going to lose his job and

Plaintiff continued to enter his classroom after this date."  <u>Id.</u>  Plaintiff noticed that

the date of the application and the date on the denial letter from the Pennsylvania

Department of Education were the same.  Id.

Two days later, on August 20, 2003, at approximately 11:30 a.m., while Plaintiff was working in his classroom, Monaghan told Plaintiff that he had to submit a letter of resignation or he was going to be terminated . Id. ¶ 14. Plaintiff's decision had to be made by 3:00 p.m. that day.  Monaghan told Plaintiff that if he was terminated, he would lose all the course credits he had earned toward his teaching degree and never be able to teach in Pennsylvania again.  Id.  Plaintiff asked Monaghan if he could give his answer after he had an opportunity to speak with the education department's attorney; however, Monaghan responded that he could not and stated that Plaintiff had until 3:00 p.m. on August 20, 2003 to either resign or to be terminated by Monaghan.  Id. ¶ 15.

Plaintiff alleges that he immediately contacted Edward E. Demyanovich ("Demyanovich"), the president and union representative of Plaintiff's union of the Pennsylvania State Educational Association, the Schuylkill County Area Vocational Technical School Educational Association ("Schuylkill County AVTSEA") as of June 2002, to seek his union's representation in a grievance process.  Id. ¶ 24.  Demyanovich was working in his classroom in preparation for the new school year and attempted to contact Martin Herring ("Herring"), the union's attorney in Philadelphia.  "Attorney Herring was not available until the

next day, and therefore Demyanovich contacted his more senior past union

contacts and other representatives for advise [sic].  Based upon his contacts and/or

lack of contacts, he stated to Plaintiff that 'Jim [Monaghan] being the director of

education must know what he is talking about . . . [that Plaintiff would loose al

[sic] his credits from Temple University and would never be able to teach in

Pennsylvania again] . . . and that we must trust his judgment.'"  Id. ¶ 25.

After speaking with Demyanovich, Plaintiff explained to Monaghan that the

union attorney would not be available under the next day and asked that Monaghan

wait until the next day.  Id. ¶ 26.  The said request was denied and Plaintiff was

again told that if he did not resign before 3:00 p.m., that he would be terminated

that day.  Id. ¶ 27.  In addition, Plaintiff alleges that requests to meet or discuss the

termination with Dr. Gerald Achenbach ("Achenbach"), Monaghan's immediate

director, were unsuccessful on August 20, 2003.  Achenbach directed Monaghan to

terminate Plaintiff or to have him resign that date by 3:00 p.m.  Id. ¶ 28.

A letter of resignation written by Monaghan was given to Plaintiff to sign.

With no viable options, Plaintiff signed the letter of resignation.  Id. ¶ 16.  The

following day, Herring and the Schuylkill County AVTSEA regional Unit-Serve

Representative, Janet Kuykendall ("Kuykendall") told Demyanovich that because

Plaintiff resigned, he was no longer a union member and no grievance could be

pursued on his behalf.  Id. ¶ 29.

Plaintiff states that he never received a verbal or written reminder from

anyone regarding the amount of time he had to receive his Vocational I Certificate.

Id. ¶ 17.  Moreover, during his relevant time of employment, Plaintiff asserts that

he was working for Defendants pursuant to an "internship certificate."  On the back

of this certificate, it states that it is valid for a three year period from the date of

issuance and does not indicate a date of expiration.  Id. ¶ 18.  Plaintiff was taking

classes at Temple University toward his teaching certification.  Id.

## DISCUSSION:

We initially note that Plaintiffs' claims are brought pursuant to 42 U.S.C. §

1983 on the basis of alleged constitutional violations of the Fourteenth Amendment

procedural due process and substantive due process clauses.  Section 1983

provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . .  subjects, or
> causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . .

42 U.S.C. § 1983.  In order for a plaintiff to prevail under § 1983 he must establish

two elements: (1) that the conduct complained of was committed by a person

acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993) (citing Parratt v. Taylor, 451 U.S. 527, 534 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)).

In the Motion, Defendants initially argue that Plaintiff's procedural due process claim must be dismissed as VOTEC and the Schuylkill County AVTSEA, identified by Plaintiff as the contract in effect between Defendants and himself, provides a grievance procedure that ends in arbitration. Defendants cite to caselaw in support of the assertion that access to a grievance procedure defeats a procedural due process claim. Second, with respect to Plaintiff's substantive due process claim, Defendants assert that Plaintiff's tenured public employment does not qualify as a fundamental property right entitling Plaintiff to substantive due process protection. Third, Defendants contend that Plaintiff has failed to state specific claims against the individual Defendants, Achenbach and James S. Fogarty ("Fogarty") in each of his § 1983 counts of his amended complaint. Fourth, Defendants maintain that Plaintiff's claims against all individual Defendants in their official capacities must be dismissed as unnecessary because Plaintiff's constitutional claims are essentially suits against the school district, which is

already a named Defendant.  Fifth, Defendants argue that Plaintiff's claim for

punitive damages against the VOTEC must be dismissed.  Finally, Defendants

assert that the Court should not exercise supplemental jurisdiction over Plaintiff's

state law claims.

We will discuss Defendants' arguments in turn.

**A.**     **Procedural Due Process Claims**

As we previously explained, Defendants assert that Plaintiff's access to a

grievance procedure in the governing CBA defeats a claim of procedural due

process.  Plaintiff, however, argues that the administrative grievance process

proved to be futile and inadequate to him and that he did not skip the process that

was available to him.  Moreover, Plaintiff contends that through their actions and

inaction, Defendants have failed to comply with their duty of providing Plaintiff

with due process of law regarding his discharge as he was terminated from his

employment position without a hearing, warning, or notice, in violation of the Fifth

and Fourteenth Amendments.

Plaintiff accurately submits that the Third Circuit Court of Appeals has

instructed that although the policy of requiring exhaustion of administrative

remedies is a strong one, various exceptions have been recognized.  Komninos v.

Upper Sadle River Bd. of Educ., 13 F.3d 775 (3d Cir. 1994).  Recognized

exceptions include the following: (1) lack of notice of administrative remedies; (2) futility of inadequacy of administrative remedies; (3) the issue presented is purely a legal question; (4) the administrative process cannot grant effective relief; or (5) if requiring exhaustion would work severe or irreparable harm upon a litigant.  Id. at 778; see also Lester H. v. Gilhool, 916 F.2d 865,869-70 (3d Cir. 1990); Frith v. Galeton Sch. Dist., 900 F. Supp. 706, 710-11 (M.D. Pa. 1995).  We note that pursuant to the second exception, futility or inadequacy of administrative remedies, there is no requirement to exhaust the administrative process where resort to this process would be futile or the available administrative remedies would be inadequate.  See Stauffer ex rel. DeMarco v. William Penn Sch. Dist., 829 F. Supp. 742, 748-50 (E.D. Pa. 1993).

As Plaintiff aptly states in his submission and taking Plaintiff's allegations as true as we must at this juncture, he was only provided with a period of approximately three and one-half hours (11:30 a.m. to 3:00 p.m.) to decide whether to submit a letter of resignation or to be terminated and allegedly lose all course credits that he had earned toward his teaching degree and never be able to teach in Pennsylvania again.  Within that short period of time, as previously detailed, Plaintiff immediately contacted Demyanovich, the president and union representative of Plaintiff's union of the Pennsylvania State Educational

Association, the Schuylkill County AVTSEA as of June 2002, to seek his union's representation in a grievance process.  Id. ¶ 24.  Demyanovich was working in his classroom in preparation for the new school year and attempted to contact Herring, the union's attorney in Philadelphia.  "Attorney Herring was not available until the next day, and therefore Demyanovich contacted his more senior past union contacts and other representatives for advise [sic].  Based upon his contacts and/or lack of contacts, he stated to Plaintiff that 'Jim [Monaghan] being the director of education must know what he is talking about . . . [that Plaintiff would loose al [sic] his credits from Temple University and would never be able to teach in Pennsylvania again] . . . and that we must trust his judgment.'"  Id. ¶ 25.  After speaking with Demyanovich, Plaintiff explained to Monaghan that the union attorney would not be available under the next day and asked that Monaghan wait until the next day.  Id. ¶ 26.  The said request was denied and Plaintiff was again told that if he did not resign before 3:00 p.m., that he would be terminated that day. Id. ¶ 27.  In addition, Plaintiff alleges that requests to meet or discuss the termination with Achenbach, Monaghan's immediate director, were unsuccessful on August 20, 2003.  Achenbach directed Monaghan to terminate Plaintiff or to have him resign that date by 3:00 p.m.  Id. ¶ 28.  Finally, the following day, Herring and the Schuylkill County AVTSEA regional Unit-Serve Representative

informed Demyanovich that because Plaintiff had resigned, he was no longer a union member and no grievance could be pursued on his behalf.  Id. ¶ 29.

Following Defendants' argument, Plaintiff should have enlisted the assistance of the union and properly filed a grievance within a three hour period, which would not only have been absurd, but quite likely impossible under the circumstances, and which would elevate form over substance.  The remedy itself, filing a grievance with the union, was doomed to fail in any event as it is clear that Plaintiff was going to be terminated within the next three hours regardless of whether he filed a grievance.  Plaintiff was therefore faced with a Hobson's choice, which we believe makes Defendants' failure to grieve argument meritless.

We find that although exhaustion of administrative remedies is a strong policy, taking Plaintiff's allegations as true as we must, Plaintiff has demonstrated that the administrative process was futile or inadequate under the circumstances of this case.  See Lester H., 916 F.2d at 869-70; Frith, 900 F. Supp. at 710-11; Stauffer ex rel. DeMarco, 829 F. Supp. at 748-50.  We therefore do not find, contrary to Defendants' assertions, that the mere fact that Plaintiff had access to a grievance procedure under the CBA defeats his claim of a procedural due process violation.

Accordingly, our procedural due process inquiry does not end.  We must

determine whether Plaintiff has stated a procedural due process claim upon which

relief can be granted.  The Third Circuit has stated that when a plaintiff sues under

§ 1983 for a state actor's failure to provide procedural due process, a court

employs a "two-stage analysis" inquiring (1) whether the asserted individual

interests are encompassed within the Fourteenth Amendment's protections of life,

liberty or property; and (2) whether the procedures available provided the plaintiff

with due process of law.  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

First, Defendants do not contest, for purposes of the instant Motion, that

Plaintiff had a property right in his employment.  (Defs.' Br. Supp. Mot. Dismiss at

5, n.1).  Therefore, the pertinent inquiry is whether the procedures available

provided Plaintiff with due process of law.  In that regard, Plaintiff asserts that

Defendants, through their actions and inactions, have failed to comply with their

duty of providing due process of law to Plaintiff regarding his discharge as he was

terminated without notice, a hearing, an opportunity to be heard, and other

procedural guarantees.  "The deprivation of Plaintiff's employment without any

opportunity to speak or respond in a meaningful pre-termination hearing amounted

to a deprivation of a constitutionally protected property interest without due

process of law."  (Am. Compl. ¶ 38).

In response, although Defendants argue that pursuant to Dykes v.

Southeastern Pennsylvania Transportation Authority, 68 F.3d 1564 (3d Cir. 1995),

cert. denied, 517 U.S. 1142 (1996), Plaintiff had the right to request the union take

his grievance to arbitration and if the union failed to do so, Plaintiff could have

sued the union for violation of his duty of fair representation, we find that case to

clearly be factually distinguishable from the instant case, for the reasons that

follow.

In Dykes, the Third Circuit Court of Appeals analyzed whether the plaintiff

could bring a valid Fourteenth Amendment claim for deprivation of a property

interest in his job without due process of law.  Dykes, 68 F.3d at 1570-72; see also

Harris v. SEPTA, 2005 U.S. Dist. LEXIS 16199 (E.D. Pa. 2005).  The plaintiff in

Dykes "had available to him a three step grievance process which could have been

followed by arbitration.  The grievance process was exhausted and, when the union

determined not to carry the matter to arbitration, [plaintiff] did not pursue a state

court action alleging breach of the duty of fair representation."  Dykes, 68 F.3d at

1571.  The Third Circuit noted in Dykes that "where a due process claim is raised

against a public employer, and grievance and arbitration procedures are in place . .

. those procedures satisfy due process requirements 'even if the hearing conducted

by the Employer . . . [was] inherently biased.'"  Id. (quoting Jackson v. Temple

Univ., 721 F.2d 931 (3d Cir. 1983)).  In addition, the Third Circuit explained that

13

the plaintiff could have asked a court of common pleas to order arbitration pursuant to the collective bargaining agreement, thereby assuring him of the due process to which he was entitled and concluded that because he chose to not do so, plaintiff is unable to prove a violation of § 1983.  Id. at 1572.

In the case sub judice, as Defendants submit and as in Dykes, the CBA in effect during the relevant time period in this action between the VOTEC and Schuylkill County AVTSEA has a grievance procedure that ends in arbitration.  In Dykes, the grievance procedure was exhausted and the union determined not to carry the matter to arbitration.  Following Defendants' argument, Plaintiff should have enlisted the assistance of the union and properly filed a grievance within a three hour period, which as noted is an absurdity.  Within the extremely short period of time within which Plaintiff was to decide whether to resign or to be terminated by his employer, Plaintiff engaged in the series of steps outlined above which commenced with immediately contacting the president and union representative to seek his union's representation in a grievance process and concluded with the denial of union grievance sponsorship based upon Plaintiff's resignation.  (See Am. Compl. ¶¶ 24-30).  Moreover, we have already determined that taking Plaintiff's allegations as true as we must, Plaintiff has demonstrated that the administrative process available to him was futile or inadequate, based on the

circumstances of this case.  As Plaintiff submits, in stark contrast to the facts of this case, there was no issue in <u>Dykes</u> concerning the adequacy or effectiveness of the union procedures available.  We therefore find the <u>Dykes</u> case to be factually distinguishable from the above-captioned case.

Taking Plaintiff's allegations in the amended complaint as true as we must at this juncture, we find that Plaintiff has stated a procedural due process cause of action upon which relief can be granted.  Defendants' Motion is accordingly denied with respect to Plaintiff's procedural due process claim.

###    B.    **Substantive Due Process Claim**

In Count 3 of his amended complaint, Plaintiff asserts a substantive due process claim.  Defendants assert that Plaintiff's tenured public employment was not a fundamental property right and therefore he was not entitled to substantive due process protection.  (Defs.' Br. Supp. Mot. Dismiss at 7).  In response, Plaintiff contends that in usurping the Department of Education's power and terminating Plaintiff over a certification issue, coupled with a complete denial of a due process hearing, reveal that there was government action motivated by some improper purpose, bad faith, or bias and that Plaintiff was deliberately and capriciously deprived of a property right.  (Pl.'s Br. Opp. Mot. Dismiss at 9).

To prevail on a substantive due process claim based on a non-legislative or

executive decision, Plaintiff must show the deprivation of that "certain quality" of property or liberty interest as is recognized as worthy of substantive due process protection. Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 140 (3d Cir. 2000). In addition, the action causing the alleged deprivation must be so egregious that it "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998); United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pennsylvania, 316 F.3d 392, 399-401 (3d Cir. 2003). For Plaintiff to prevail on his substantive due process claim with regard to his employment position with Defendant VOTEC, he must establish that he has a property interest protected by the Fourteenth Amendment. The right to property is an interest protected by the Fourteenth Amendment's substantive due process clause; however, not all property rights fall within the rubric of the substantive component of the Fourteenth Amendment. Dennison v. Pa. Dep't of Corr., 268 F.Supp.2d 387, 400 (M.D. Pa. 2003) (citing Nicholas, 227 F.3d at 139-40). In determining whether a certain property interest embodies this "particular quality," the Third Circuit has carefully reviewed the applicable case law. The Third Circuit concluded that it is not determined by reference to state law, but depends on whether that interest is "fundamental" under the Constitution. See Nicholas, 227 F.3d at 140. The substantive component of the Fourteenth Amendment therefore only applies to

16

fundamental property interests.  <u>Id.</u> at 140-41.

The Third Circuit has limited review of property interests under the substantive due process clause to claims involving real property ownership, which has historically been protected by the Constitution and is considered fundamental to American society.  <u>See</u> <u>Dennison</u>, 268 F.Supp.2d at 400 (citations omitted).  Plaintiff's claim is not one in real property, rather, it is a claim stating a property interest in a job.  It is not, therefore, a fundamental property interest protected by the substantive component of the Fourteenth Amendment.  <u>Id.</u>  Additionally, as Defendants submit and the great majority of courts of appeals, including the Third Circuit have held, tenured public employment is not a fundamental property right.  <u>See</u> <u>Nicholas</u>, 227 F.3d at 142 (listing group of cases that support this proposition).  Moreover, Plaintiff's amended complaint reveals that during the relevant time period of this action, Plaintiff was working for Defendants pursuant to an "internship certificate" which included a notation asserting its validity for a three year period.  (Am. Compl. ¶ 18).

Accordingly, after a careful review of the record, we hold that Plaintiff has failed to demonstrate that Defendants have interfered with one of his constitutionally protected fundamental property interests.  Defendants' Motion is granted with respect to Plaintiff's substantive due process claim.

**C.**     **Section 1983 Claims Against Defendants Achenbach and Fogarty**

Defendants argue that Plaintiff's claims against the individual Defendants, Achenbach and Fogarty, in each of his amended complaint § 1983 Counts must be dismissed as Plaintiff has failed to allege specific conduct sufficient to meet the heightened pleading standard articulated in <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3d Cir. 1988), <u>cert.</u> <u>denied</u>, 489 U.S. 1065 (1989), in cases brought against government officials in their individual capacities.

It is important to first note that contrary to Defendants' assertions regarding the fact that the federal courts abandon notice pleading and apply a heightened pleading standard in cases brought against government officials in their individual capacities, the Third Circuit Court of Appeals has in fact abandoned a heightened pleading requirement for civil rights actions.  <u>See</u> <u>Alston v. Parker</u>, 363 F.3d 229, 233 (3d Cir. 2004) ("Fundamentally, a heightened pleading requirement for civil rights complaints no longer retains vitality under the Federal Rules.").  Although once enforced in several circuits, including ours, a fact-pleading requirement for civil rights complaints has been rejected by the Supreme Court in no uncertain terms, as we will discuss below.

In <u>Evancho v. Fisher</u>, 2005 WL 2179883 (3d Cir. Sept. 12, 2005), the Third Circuit Court of Appeals provided a detailed analysis concerning the heightened

pleading standard, in which reference is made to <u>Leatherman v. Tarrant County</u>

<u>Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163 (1993).  In

<u>Leatherman</u>, the Supreme Court addressed the question of "whether a federal court

may apply a 'heightened pleading standard'- more stringent than the usual pleading

requirement of Rule 8(a) of the Federal Rules of Civil Procedure-in civil rights

cases alleging municipal liability."  <u>Id.</u> at 164.  The Supreme Court held that it may

not and noted that Rule 8(a)(2) requires "a complaint [to] include only a short and

plain statement of the claim showing that the pleader is entitled to relief."

<u>Evancho</u>, 2005 WL 2179883, at *4 (<u>quoting</u> <u>Leatherman</u>, 507 U.S. at 168).  Since

<u>Leatherman</u>, which was decided in 1993, the Third Circuit has applied the more

liberal notice pleading standard set forth in Rule 8(a) in civil rights cases.  <u>See</u>,

<u>e.g.</u>, <u>Abbott v. Latshaw</u>, 164 F.3d 141 (3d Cir. 1998) (involving § 1983 complaint

filed by a husband against his ex-wife, a city constable, and three police officers);

<u>Weston v. Commonwealth of Pennsylvania</u>, 251 F.3d 420 (3d Cir. 2001)

(involving a hostile work environment sexual harassment complaint filed by an

employee against his state employer and his co-workers).  Moreover, the Supreme

Court reaffirmed the application of the liberal notice pleading standard of Rule 8 in

<u>Swierkiewicz v. Sorema</u>, 534 U.S. 506 (2002), in the context of an employment

discrimination complaint filed by an employee against a former employer.

19

Based upon clear precedent as noted above, we find that Plaintiff's § 1983 amended complaint is to be considered under the more liberal standards of notice pleading, as opposed to pursuant to a heightened pleading requirement.  Although Defendants contend that Plaintiff has not alleged sufficient conduct in the amended complaint regarding Defendants Achenbach and Fogarty, under the more liberal standards of notice pleading and Federal Rule 8, it is premature to dismiss the aforementioned Defendants from the case at this juncture.  The Court reserves the right to revisit this ruling if Defendants interpose similar arguments in a properly filed motion for summary judgment, after discovery has been conducted.

### D.   Claims Against all Defendants in their Official Capacities

In the Motion, Defendants argue that to the extent that Plaintiff has sued each individual Defendant "individually" and in his "official capacity," such a claim is redundant and should be dismissed.  In that vein, Defendants contend that Plaintiff's constitutional claims against the Defendants in their official capacities are "unnecessary because they are essentially suits against the school district, which is already a named Defendant."  (Defs.' Br. Supp. Mot. Dismiss at 9).  In response, Plaintiff states that the claims asserted against the three individual Defendants in their individual and official capacities must remain and cites to one case in support of the proposition that where a suit is brought against a public

officer in his official capacity, the suit is treated as if the suit were brought against the governmental entity of which he is an officer.  (Pl.'s Br. Opp. Defs.' Mot. Dismiss at 11).

Defendants accurately assert that there is no longer a need to bring official capacity actions against local government officials because pursuant to <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978), a local government can be sued directly for damages and injunctive or declaratory relief.[1]  <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14; <u>see</u> also <u>Satterfield v. Borough of Schuylkill Haven</u>, 12 F.Supp.2d 423, 432 (E.D. Pa. 1998).  In addition, in his official capacity, a public official is "legally indistinct from the municipality which he serves."  <u>Satterfield</u>, 12 .Supp.2d at 431-32 (internal citations omitted).  Therefore, the official capacity suits against Defendants Monaghan, Achenbach, and Fogarty are unnecessary because they are essentially suits against the VOTEC, which is already a named Defendant.  <u>Id.</u> at 432.  As the United States District Court for the Eastern District of Pennsylvania explained in <u>Satterfield</u>, although we recognize that we are not required to do so, <u>see</u> <u>Crighton v. Schuylkill County</u>, 882 F. Supp.

---

[1] The Supreme Court instructed, in <u>Monell</u> that local governing bodies and local officials sued in their official capacities, can be sued directly under § 1983 for monetary, declaratory, and injunctive relief in those situations where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." <u>Monell</u>, 436 U.S. at 659.

411 (E.D. Pa. 1995), we will exercise our discretion and grant Defendants' Motion to dismiss the official capacity claims against Defendants Monaghan, Achenbach, and Fogarty.  In doing so, we emphasize that the suit against the VOTEC is premised upon the misconduct of its employees and that the VOTEC is liable for the misconduct of each VOTEC employee acting in his or her official capacity. Accordingly, granting Defendants' Motion in this respect will not substantially affect Plaintiff's claims.  See Satterfield, 12 F.Supp.2d at 432.

### E.   Punitive Damages Against VOTEC

Next, Defendants assert that Plaintiff's claim for punitive damages against the VOTEC must be dismissed as punitive damages are not allowed against a municipality unless expressly authorized by statute.  In response, Plaintiff concedes that punitive damages are not permitted against "the municipality school," Defendant VOTEC, or the individual Defendants in their official capacities.  (Pl.'s Br. Opp. Defs.' Mot. Dismiss at 12).  Plaintiff, however, asserts that the individual Defendants may be held liable in their individual capacities for compensatory and punitive damages pursuant to § 1983 as their actions were allegedly motivated by evil motive or intent, and involved reckless or callous indifferent to Plaintiff's federally protected rights.  Id.

We are in agreement with the parties that punitive damages are not available

22

under the civil rights statutes against a municipality.  Crawford v. Commonwealth of Pennsylvania, 2003 WL 22169372, at *11 (M.D. Pa. Sept. 12, 2003); see also City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981); Gentry v. Resolution Trust Corp., 937 F.2d 899 (3d Cir. 1991).  Both parties concede that the Defendant VOTEC is a municipal school.  Therefore, to the extent that Count 5 of the amended complaint asserts a claim for punitive damages against the Defendant VOTEC, punitive damages are not permitted under § 1983.[2]  Furthermore, as a general rule, punitive damages are not available against a municipality unless specifically authorized by statute, which Plaintiff has not established, since such awards are against "sound public policy" and burden taxpayers who are not responsible for the wrongdoing.  Crawford, 2003 WL 22169372, at *11 (citing City of Newport, 453 U.S. at 261-63).

Although not directly addressed in Defendants' Motion, we do note that punitive damages are available as against the individual Defendants, as Plaintiff submits.  See Kentucky v. Graham, 473 U.S. 159, 167 n.13 (citing Smith v. Wade, 461 U.S. 30 (1983) ("Punitive damages are not available under § 1983 against a municipality . . . but are available in a suit against an official personally[.]")).  At

---

[2] We note that it is unnecessary to address whether punitive damages are permissible as against the individual Defendants in their official capacities as we have dismissed the official capacity claims against Defendants Monaghan, Achenbach, and Fogarty.

this early stage of the case, the Court cannot assume that Plaintiff will be unable to present evidence in support of a claim for punitive damages.  Defendants therefore reserve the right to raise arguments regarding punitive damages as against the individual Defendants when a more fulsome record is before the Court.

Defendants' Motion is granted to the extent that Plaintiff's claim for punitive damages against Defendant VOTEC must be dismissed.

### F.   Jurisdiction over Supplemental State Law Claims

The Supreme Court has instructed that although district courts may not exercise jurisdiction absent a statutory basis, it is well established, in certain classes of cases, that once a court has original jurisdiction over some claims in the action it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy.  Exxon Mobil Corp. v. Allapattah Servs., 2005 U.S. LEXIS 5051, at *13 (2005) (citing Mine Workers v. Gibbs, 383 U.S. 715 (1966)).  As we have determined that Plaintiff's procedural due process claim states a cause of action upon which relief can be granted, we have discretion to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  We will address those claims in turn.

### i.   Negligent Infliction of Emotional Distress

In the Motion, Defendants argue that Count 6 of Plaintiff's amended

complaint which alleges a negligent infliction of emotion distress ("NIED") claim

is barred by the Political Subdivision Tort Claims Act ("PSTCA"), 42

Pa.Cons.Stat. § 8541, *et seq.*  In response, Plaintiff argues that the PSTCA does not

apply to acts that intentional torts amount to actual malice or willful misconduct

and that Defendants' actions have resulted in serious emotional disturbance.


Section 8541 of the PSTCA provides, as follows:

> Except as otherwise provided in this subchapter, no local agency shall
> be liable for any damages on account of any injury to a person or
> property caused by any act of the local agency or any employee
> thereof or any other person.

42 Pa.Cons.Stat. § 8541.  Defendants accurately submit that with the exception of

eight areas of activity, the PSCTA reinstates the general grant of immunity to all

local agencies for damages caused by acts of an agency or its employees.[3]  See 42

Pa.Cons.Stat. § 8542.  Section 8542 provides that a "local agency shall be liable for

damages on account of an injury to a person or property within the limits set forth

in this subchapter if both of the following conditions are satisfied and the injury

occurs as a result of one of the acts set forth in subsection (b)."  (emphasis added).

Although Plaintiff's claim of NIED is a permissible cause of action under 42

---

[3] A vocational technical school is a "local agency" which is protected by the immunity of
the PSTCA.  42 Pa.Cons.Stat. § 8501.

Pa.Cons.Stat. § 8542(a)(1) and assuming, <u>arguendo</u> that Plaintiff's injury was caused by the negligence of Defendants or an employee thereof acting within the scope of his office or duties,[4] none of the eight enumerated exceptions to governmental immunity set forth in 42 Pa.Cons.Stat. § 8542(b) apply to Plaintiff's NIED claim against Defendants in this case.  Accordingly, Defendants' Motion is granted to the extent that Defendants are immune from Plaintiff's NIED claim and Count 6 of Plaintiff's amended complaint will be dismissed.

### ii.   <u>Employment Contract</u>

In the Motion, Defendants argue that Count 7 of Plaintiff's amended complaint, breach of employment contract, should be dismissed as Plaintiff has failed to specifically identify Defendants' alleged breach of the employment contract.  (Defs.' Br. Supp. Mot. Dismiss at 11).

To plead a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid and binding contract; (2) the contract's essential terms; (3) that he complied with the contract's terms; (4) that the defendant breached a duty

---

[4] Although Plaintiff has asserted a NIED claim against Defendants, he argues that Defendants "willfully and deliberately" deprived him of his rights, which is outside of the "negligent act" requirement of 42 Pa.C.S. § 8542(a)(1).  Even assuming, <u>arguendo</u> that Plaintiff's injury was caused by the negligence of Defendants or an employee thereof acting within the scope of his office or duties, as we previously noted, Plaintiff fails to demonstrate that one of the eight enumerated exceptions to governmental immunity applies.  <u>See</u> 42 Pa.C.S. § 8542(a)-(b).

imposed by the contract; and (5) damages resulting from the breach.  Gundlach v. Reinstein, 924 F.Supp. 684, 688 (E.D. Pa. 1996), aff'd, 114 F.3d 1172 (3d Cir. 1997).

In Count 7 of the amended complaint, Plaintiff alleges that his employment contract with Defendants, as well as the rules and regulations used by Defendant VOTEC in its overseeing of teachers, "indicates that all issues regarding certification fall under the auspices of the Pennsylvania Department of Education, not the Defendant school."  (See Am. Compl. ¶ 54).  Plaintiff asserts that Defendants breached the contract and constructively discharged him from employment by failing to honor the authority and responsibility of the Pennsylvania Department of Education ("DOE") to withdraw his teaching certification, to decertify him from teaching, or to fail to reissue his certification of verification.  Id.  Moreover, Plaintiff alleges that Defendant VOTEC improperly and illegally usurped the Pennsylvania DOE's authority by requiring Plaintiff to either resign or to be terminated.  Id. ¶ 55.

Taking all of Plaintiff's allegations in the amended complaint as true as we must at this juncture, and at this early stage of the litigation, we do not find that Plaintiff has failed to state a cause of action for breach of contract.  Accordingly, Defendants' Motion is denied in that respect.

### iii.   Statutory Violation Claim

Finally, in the Motion, Defendants contend that Plaintiff's statutory due process rights were not violated for the same reasons Defendants asserted that Count 2 of Plaintiff's amended complaint, his procedural due process claim, should be dismissed.  (Defs.' Br. Supp. Mot. Dismiss at 12).

As we have determined that Plaintiff has stated a cause of action upon which relief can be granted with regard to his procedural due process claim for the above-cited reasons, we likewise hold that Plaintiff has stated a cause of action upon which relief can be granted concerning the violation of his statutory due process rights in the case <u>sub judice</u>.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.   Defendants' Motion to Dismiss Plaintiff's Amended Complaint (doc. 24) is granted in part and denied in part to the following extent:

   a.   Defendants' Motion is granted with respect to Plaintiff's substantive due process claim (Count 3).  Plaintiff's claim for punitive damages against Defendant VOTEC shall be dismissed.  Plaintiff's official capacity claims against Defendants Monaghan, Achenbach, and Fogarty

shall be dismissed.  Also, Count 6 of Plaintiff's amended complaint, addressing negligent infliction of emotional distress, shall be dismissed based upon Defendants' immunity.

b.   Defendants' Motion is denied with respect to Plaintiff's procedural due process claim (Count 2), breach of contract claim (Count 7), and statutory due process claim (Count 8).

s/ John E. Jones III
John E. Jones III
United States District Judge