IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN J. COREIA,                    :      Case No. 4:CV-04-2425
                    Plaintiff      :
                                   :      Judge Jones
            v                      :
                                   :
SCHUYLKILL COUNTY AREA             :
VOCATIONAL-TECHNICAL               :
SCHOOL AUTHORITY, ET AL.           :
                    Defendants     :

**MEMORANDUM AND ORDER**

May 11, 2006

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Motion for Summary Judgment ("the Motion")

(doc. 40) filed by Defendants Schuylkill County Area Vocational-Technical School

Authority, James Monaghan, and Gerald Achenbach (collectively "Defendants") on

April 3, 2006.

For the reasons that follow, Defendants' Motion will be granted.

**PROCEDURAL HISTORY:**

As we explained in our September 16, 2005 Order, the plaintiff, John J.

Coreia ("Plaintiff" or "Coreia") initiated this action by filing a complaint in the

United States District Court for the Middle District of Pennsylvania on November

1

5, 2004 pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1342, 28 U.S.C. § 1343, 42

U.S.C. § 1983, and invoking the Court's supplemental jurisdiction pursuant to 28

U.S.C. § 1367(c).  (Rec. Doc. 29).  On January 24, 2005 Defendants filed a Motion

to Dismiss Plaintiff's complaint, which was briefed by the parties.  On March 24,

2005, we issued an Order directing Plaintiff to file an amended complaint as

Plaintiff attached factual allegations to his submission that were not contained within

the four corners of his complaint.  (See Rec. Doc. 19).

On June 30, 2005, Plaintiff filed an amended complaint.  On September 16,

2005, we granted Defendants' Motion to Dismiss Plaintiff's amended complaint in

part and denied it in part.  (Rec. Doc. 29).  We granted Defendants' Motion with

respect to the following: (1) Plaintiff's substantive due process claim (Count 3); (2)

Plaintiff's claim for punitive damages against Defendant Schuylkill County

Intermediate Unit #29 ("I.U."); (3) Plaintiff's official capacity claims against

Defendants James Monaghan ("Monaghan"), Gerald Achenbach ("Achenbach"),

and James S. Fogarty ("Fogarty"); and (4) Plaintiff's claim for negligent infliction

of emotional distress (Count 6).  Id.  By way of stipulation, on March 13, 2006,

Defendant Fogarty was dismissed from this lawsuit.  (Rec. Doc. 35).

Defendants filed the instant Motion on April 3, 2006, which has been briefed

by the parties.  The Motion is therefore ripe for disposition.

2

**STANDARD OF REVIEW:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED .R. CIV. P.  56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992).  Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them.  Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial.  Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).  The United States Supreme

3

Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor.  Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original).  "As to materiality, the substantive law will identify which facts are material."  Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

## <u>FACTUAL BACKGROUND</u>:

We initially note that we will, where necessary, view the facts and all inferences to be drawn therefrom, in the light most favorable to the nonmoving party, Plaintiff, in our analysis of the pending Motion.

Local Rule ("L.R.") 56.1 governs motions for summary judgment.  We note with some disappointment Plaintiff's failure to adhere to the strictures of L.R. 56.1, in particular the requirement that:

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement [filed by the moving party], as to which it is contended that there exists a genuine issued to be tried.

In the case <u>sub</u> <u>judice</u>, in accordance with L.R. 56.1, Defendants filed contemporaneously with their Motion a "Statement of Uncontested Facts In Support of Defendants' Summary Judgment Motion" (doc. 39).  Defendants' Statement of Uncontested Facts consists of ninety-five numbered paragraphs supported by references to the record as required under L.R. 56.1.  Stated another way, each proffered uncontested fact is supported by either an exhibit or a specific citation to the record developed during discovery.  In response thereto, Plaintiff filed an "Objection to Defendants [sic] Statement of Uncontested Facts in its Claim For Support of Summary Judgment Motion" (doc. 53), which merely "objects" to

some, not all, of Defendants' proffered uncontested facts.  Moreover, Plaintiff's

"objections" only address exhibits filed by Defendants.  Contrary to the

requirements of L.R. 56.1, Plaintiff failed to indicate whether he "admitted" or

"denied" each proffered fact and additionally failed to offer any citations to the

record in support of his "objections."

Notably, L.R. 56.1 provides instruction when its strictures are not followed.

"All material facts set forth in the statement required to be served by the moving

party will be deemed to be admitted unless controverted by the statement required

to be served by the opposing party."  Plaintiff has offered the Court no evidence to

contradict the specific factual citations and exhibits offered by Defendants in

support of their Motion.  Therefore, pursuant to L.R. 56.1 and applicable case law,

we will deem Defendants' "Statement of Uncontested Facts" to be admitted.[1]  See

Conway v. Bell Hearing Aid Centers, Inc., 2005 WL 3159072, *1 (M.D. Pa. 2005)

("As Plaintiff failed to file a statement of facts in opposition to Defendant's

statement of undisputed material facts, Defendant's statement of facts are deemed

to be admitted as true unless directly contested by Plaintiff's proffered evidence in

opposition"); Bouriez v. Carnegie Mellon Univ., 2005 WL 2106582, *2-3 (W.D.

---

[1] We note that the Local Rules for the United States District Court for the Middle District of
Pennsylvania may be found at: http://www.pamd.uscourts.gov/docs/LR12012005.pdf.

Pa. 2005).

Plaintiff worked for Defendants from November 1999 through August 2003. Defendant Schuylkill County Area Vocational-Technical School is a governmental entity consisting of three separate educational entities. The Intermediate Unit ("I.U.") encompasses special education and vocational technology education. Defendant Achenbach was employed by the I.U. as the Assistant Executive Director at all relevant times to this litigation. Also at all relevant times to this litigation Defendant Monaghan was employed by the I.U. as the Director of Vocational Educational. Defendant Fogarty, who as noted was dismissed with prejudice from this action, was employed by the I.U. as the Executive Director, but was on medical leave at all relevant times to this litigation.

Plaintiff began teaching evening adult machine trade courses at the Schuylkill Technology Center in or around November 1999. On or around December 8, 1999, the I.U. and Plaintiff jointly applied for an emergency teaching certificate. Within six months after obtaining an emergency certificate, Plaintiff passed the required competency test and started taking the appropriate classes with Temple University. (Coreia Dep. at 15-17). Plaintiff was issued a Vocational Intern Certificate with an effective date of August 2000 by the Commonwealth of Pennsylvania. (Rec. Doc. 42, Defs.' Ex. 14). The intern certificate is valid for a

7

period of three years.  Id.  A person holding a valid Vocational Intern Certificate

would become eligible for a Vocational Instructional I Certificate upon completion

of the approved intern program and presenting evidence of having passed the

Praxis I CBT in reading and writing.  (Rec. Doc. 42, Defs.' Ex. 23).

Plaintiff enrolled and attended classes at Temple University which were

necessary to obtain his Vocational I Certificate.  (Coreia Dep. 51:8-11).  While at

Temple, at the beginning of 2002, Mr. Lucarelli, Plaintiff's resource person at

Temple, informed him that he had to pass all of his certified tests required by the

State by August 2003.  Id. at 38:1-12.  While at Temple, Plaintiff was advised that

his Vocational Internship certificate was only valid for three years.  Id. at 28:8-16.

Plaintiff admits he was aware that in order to obtain his Vocational Instructional I

Certificate, he had to pass the PRAXIS test, both in reading and writing, prior to

the beginning of the school year in August 2003.  Id. at 31:11-15.  Plaintiff admits

that it is the teacher's responsibility to maintain a properly certified teaching license.

Id. at 31:21-25.  Moreover, Plaintiff admits that Defendants have an obligation to

verify that Plaintiff meets the obligations required by the State regarding teacher

certification.  Id. at 33:1-4.  Plaintiff believes it is the employing public school's

responsibility to only employ members of the professional staff who hold a valid

certificate.  Id. at 33:1-19.  Plaintiff knew and understood that his Intern Certificate

would expire in August 2003.  Id. at 43:18-25.

On June 26, 2003, Plaintiff took the PRAXIS test for the first time.  He did not take the PRAXIS test prior to June 2003 because he did not take the required English course until mid-2003.  Plaintiff was allegedly told by other instructors not to take the PRAXIS test until he finished the English course because the PRAXIS test was more difficult.  Id. at 48:8-19, 51-22; see also Rec. Doc. 42, Defs.' Ex. 9.  Plaintiff could have taken the English course at any time during his three-year vocational internship certificate period and admits that he knew that if he did not pass the PRAXIS test in three years, he would not be permitted to teach.  (Coreia Dep. 52:16-18, 55:1-8).  After taking the June 26, 2003 two-part PRAXIS test, Plaintiff received a letter from the Electronic Testing Services ("ETS") stating that there was a timing error on the part of ETS.  Id. at 57-58.  Plaintiff became aware of the testing error when he received a letter from ETS on or around July 28, 2003 and after receiving the letter from ETS, Plaintiff gave it to "someone in the administration" the day he received it.  Id. at 58:21-24, 59:12-15, 61:15-17; Rec. Doc. 42, Defs. Ex. 2.  Because of the ETS error, the writing portion of the test was deemed invalid.  In addition, when presenting the ETS letter to the administration, Plaintiff informed them that the second half of the test was deemed invalid because of a testing error.  (Coreia Dep. 60:6-8, 61:3-8).  After learning that he did not pass

the June PRAXIS test, Plaintiff subsequently failed a retest.  Id. at 69:8; Rec. Doc.

42, Defs.' Ex. 9.

After becoming aware of the problem, Achenbach had a number of

telephone conversations with the Pennsylvania Department of Education ("PDE")

regarding Plaintiff's situation, as well as the situation of another teacher with a

lapsed certificate, William Atkinson ("Atkinson").  (Achenbach Dep. 32:12-18).

Prior to August 15, 2003, Achenbach contacted Ann Shuster ("Shuster") at the

PDE for direction on how to handle the issues with the two instructors, Coreia and

Atkinson.  Shuster told Achenbach that she believed Plaintiff was faced with an

exceptional condition because of what occurred with ETS and directed Achenbach

to go to the Basic Education Circular ("BEC") to gain information concerning

lapsed certificates.  Id. at 53:20-23, 54:4-8.  Under Shuster's direction, Achenbach

completed the Validity Determination Worksheet attached to the BEC.

On August 15, 2003, Achenbach had Plaintiff sign the worksheet and then

sent Frank Meehan ("Meehan") a cover letter outlining all the issues with Plaintiff

"indicating in [his] letter that [Plaintiff] had met all requirements except for an error

by ETS."  Id. at 54:9-15; Rec. Doc. 42, Defs.' Ex. 2.  Also on August 15, 2003, in

an attempt to get Plaintiff certified to teach, Monaghan approach Plaintiff and

informed him that the I.U. was going to try to get Plaintiff an emergency certificate.

In conjunction with this effort, Plaintiff signed an emergency permit application which the District submitted.  (Coreia Dep. 67-68; Rec. Doc. 42, Defs.' Ex. 2).  On August 15, 2003, Achenbach mailed the original application for the emergency permit to Shuster.  Achenbach was cross-referencing both Shuster and Meehan at the PDE on all documents.  (Achenbach Dep. 55:2-7, Rec. Doc. 42, Defs.' Exs. 24, 2).  Meehan responded to Achenbach's letter by fax on August 18, 2005 in which he unequivocally indicated that Plaintiff's teaching certificate had lapsed. (Meehan Dep. 23:21; Rec. Doc. 42, Defs. Ex. 3).  Classes began at the I.U. on August 21, 2003 and as of that date, Plaintiff had not passed the writing portion of the PRAXIS examination.  (Coreia Dep. 69-70).  If the I.U. permitted Plaintiff to teach the following day, on August 21, 2003, it would have been subject to forfeiture penalties.  (Meehan Dep. 33:11-18).

After receiving notice from Meehan that Plaintiff's teaching certificate had lapsed, on August 29, 2003, Monaghan approach Plaintiff.  At that time, Plaintiff was presented with the option of either resigning or being terminated based upon his lack of certificate.  (Coreia Dep. 86:1-6).  Plaintiff decided to resign rather than be terminated.  (Rec. Doc. 42, Defs. Ex. 4).

In addition, after receiving the PDE's determination on August 18, 2003, Achenbach called Shuster who told Achenbach to send her Plaintiff's packet of

materials again for reconsideration.  (Achenbach Dep. 122:3-13).  Achenbach

complied with Shuster's request and sent her all materials and subsequent

correspondence regarding Plaintiff's certificate.  Id.; see also Rec. Doc. 42, Defs.'

Exs. 11-12.  On September 23, 2003, Shuster sent another letter to Achenbach

regarding the validity of Plaintiff's certificate.  The September 23, 2003 letter

established that Plaintiff's Intern Certificate lapsed on July 31, 2003.  (Rec. Doc.

42, Defs.' Ex. 6).  Moreover, Plaintiff agrees that his Intern Certificate lapsed on

July 31, 2003.  (Coreia Dep. 109:7-15).

        In October 2003, Plaintiff reapplied for a machine trade position with the

I.U.; however, at that time he told the I.U. interview committee that he had still not

passed the necessary PRAXIS tests.  (Rec. Doc. 42, Defs.' Ex. 7).  Deposition

testimony reveals that had Plaintiff demonstrated that he passed the required tests

by the October Board Meeting, Defendants would have hired Plaintiff to fill his

previous teaching position.  (Achenbach Dep. 98:19-25, 99; Rec. Doc. 42, Defs.'

Ex. 17).  Plaintiff did finally obtain his Vocational I Certification in February 2004

from the PDE.  (Coreia Dep. 121:4, Rec. Doc. 42, Defs.' Ex. 13).

        It is also important to note that Plaintiff was a dues paying member of the

Pennsylvania State Education Association ("PSEA") while he worked at the I.U.

Plaintiff was covered under the contract entered into between PSEA and the I.U.

12

Board of Directors. (Rec. Doc. 42, Defs.' Ex. 15). In August 2003, the President of the PSEA was Edward Demyanovich ("Demyanovich"). Demyanovich first became aware of Plaintiff's certification issue on August 13, 2003 through union negotiator George Zweibel. (Demyanovich Dep. 56:4-12, 60:20; Rec. Doc. 42, Defs.' Ex. 8). Demyanovich subsequently called union headquarters on August 15, 2003 and was told that Plaintiff should not resign his position. On August 19, 2003, one day before Plaintiff's alleged forced resignation, Demyanovich had a personal conversation with Plaintiff regarding the certification issue and told him that he should not sign the letter of resignation. (Demyanovich Dep. 61:12-22, 116-118; Rec. Doc. 42, Defs.' Exs. 8, 22). Even after Plaintiff signed his resignation letter, he could have rescinded it. Had Plaintiff rescinded his letter of resignation, he would have been entitled to a termination due process hearing. (Fogarty Dep. 45:11-25, 46:1-11; Rec. Doc. 42, Defs.' Ex. 19). In that regard, a termination hearing was offered to Atkinson who rescinded his letter of resignation two days after he signed it. Resignations are not accepted until the Board officially votes to accept it at a board meeting. (Fogarty Dep. 45:11-25, 46:1-11). Plaintiff's resignation was not officially accepted until the September 8, 2003 board meeting.

**DISCUSSION:**

We initially note that Plaintiff's claims are brought pursuant to 42 U.S.C. §

1983 on the basis of alleged constitutional violations of the Fourteenth Amendment

procedural due process, as well as supplemental state claims.  Section 1983

provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . .  subjects,
> or causes to be subjected, any citizen of the United States
> or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . .

42 U.S.C. § 1983.  In order for a plaintiff to prevail under § 1983 he must establish

two elements: (1) that the conduct complained of was committed by a person

acting under color of state law; and (2) that the conduct deprived a person of

rights, privileges, or immunities secured by the Constitution or laws of the United

States.  Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993) (citing Parratt v.

Taylor, 451 U.S. 527, 534 (1981), overruled in part on other grounds by Daniels v.

Williams, 474 U.S. 327 (1986)).

**A.**      **Procedural Due Process Claims**

In Counts I, II, and IV of his amended complaint, Plaintiff alleges that

Defendants, by their conduct, violated Plaintiff's rights to procedural due process of law as guaranteed by the Fourteenth Amendment in violation of 42 U.S.C. § 1983. In the Motion, Defendants argue that Plaintiff's procedural due process claims must fail as a matter of law because Defendants did not deprive him of a constitutionally protected property interest. Defendants additionally contend that Plaintiff's procedural due process claims must fail as a matter of law since Plaintiff relinquished any property interest in continued employment when he resigned his position. Even if this Court finds that Plaintiff was deprived of a constitutionally protected property interest, Defendants maintain that Plaintiff's procedural due process claim must fail as a matter of law since the procedures available provided him with due process.

In response, Plaintiff argues that he was a professional employee who was effectively terminated without proper notice and without a hearing, thus depriving him of a property interest in employment without due process of law. Plaintiff asserts that he has a constitutionally protected property interest in his continued employment and that his procedural due process claims are valid because they allege state-sponsored deprivation of a protected interest in life, liberty, or property. Plaintiff does not address Defendants' arguments that he does not have a valid procedural due process claim as a matter of law because he was not deprived of a

constitutionally protected property interest and that Plaintiff's procedural due process claims fail as a matter of law since he relinquished any property interest in continued employment when he resigned his position.

We initially note that the Fourteenth Amendment prohibits state deprivations of life, liberty, or property without due process of law.  Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984).  The Third Circuit Court of Appeals has stated that when a plaintiff sues under § 1983 for a state actor's failure to provide procedural due process, a court employs a "two-stage analysis" inquiring (1) whether the asserted individual interests are encompassed within the Fourteenth Amendment's protections of life, liberty or property; and (2) whether the procedures available provided the plaintiff with due process of law.  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); Robb, 733 F.2d at 292.

In determining whether Plaintiff has asserted a protected property interest in his employment, courts look to state law for guidance.  Indep. Enters. Inc. v. Pittsburgh Water and Sewer Auth., 103 F.3d 1165, 1177 (3d Cir. 1997) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).  Under Pennsylvania law, "professional employees" are statutorily granted the right to notice and a hearing before dismissal.  24 P.S. § 11-1101; 24 P.S. § 11-1127.  Therefore, whether Plaintiff possesses a property interest in his employment, and thus is entitled to

16

such procedural protections, hinges on his classification as a "professional employee" under 24 P.S. § 11-1127.  As the United States District Court for the Eastern District of Pennsylvania has explained, "[a]n essential question in determining whether a public school employee is a professional employee is whether the employee maintains the proper professional certification."  Moiles v. Marple Newtown Sch. Dist., 2002 WL 1964393 (E.D. Pa. 2002).

        As accurately submitted by Defendants, in Moiles, Judge DuBois applied the holding and rationale of the Pennsylvania Commonwealth Court case in Occhipinti v. Bd. of Sch. Dirs. of Old Forge Sch. Dist., 464 A.2d 631 (Pa. Commw. Ct. 1983), in determining whether a teacher who permits his teaching certificate to lapse continues to enjoy a property interest in his employment.  Reliant upon Occhipinti, Judge DuBois stated that "upon the lapsing of a professional certificate, a public school employee immediately loses professional employee status."  Moiles, 2002 WL 1964393, at *7.  In applying the holding and rationale of Occhipinto to the facts of Moiles, Judge Dubois held the following:

> Based on the Commonwealth Court's Occhipinti decision, as
> reaffirmed in Moiles, this Court concludes that, under Pennsylvania
> law, plaintiff was no longer a professional employee immediately after
> his professional certification lapsed on January 28, 1998.  This
> conclusion effectively ends the procedural due process inquiry.  As of
> January 29, 1998, plaintiff was not entitled to the procedural
> protections statutorily granted to professional employees under 24

17

> P.S. § 11-1127.  Stated otherwise, as of January 29, 1998, plaintiff had
> no property interest in his continued employment.  Accordingly, when
> plaintiff's employment was terminated, he was not deprived of a
> constitutionally protected property interest, and he may not state a
> claim for a violation of his procedural due process rights . . . In sum,
> none of plaintiff's arguments undermine defendants' position that
> plaintiff had no property interest in his continued employment as of the
> time his professional certification lapsed on January 28, 1998.  As of
> that date, plaintiff did not have a constitutionally protected property
> interest in continued employment.  For that reason, his termination is
> not actionable in a procedural due process claim.

Id. at *8-9.

In addition, recently, in Savage v. Bangor Area Sch. Dist., 2005 WL 745785

(E.D. Pa. 2005), a case wherein the defendant school district argued by way of a

motion to dismiss that plaintiff's failure to maintain the required teaching certificate

precludes any property interest in continued employment, Judge Gardner reaffirmed

the holdings in Moiles and Occhipinti and stated the following:

> Plaintiff did eventually receive her [teaching] certification in either
> September or October 2003, but this was well after the July date she
> claims in her brief.  It is clear that at the time of her termination she did
> not have certification.  Under the Moiles and Occhipinti cases, this
> lack of certification would prevent her from having a property interest
> in ongoing employment.  Under these same cases, the fact that she
> may have obtained this certification at some later date is of no
> consequence.

Savage, 2005 WL 745785, at *8.

In his submission, Plaintiff appears to be basing all of his claims on the

actions or inactions of the PDE, an entity that is not a party in the above-captioned case.  In addition, Plaintiff asserts by way of Shuster's deposition testimony that Defendants could not have acted to remove Plaintiff from his teaching responsibilities until they received "official" notice signed by Shuster on September 23, 2003.  However, we first note that Achenbach had no knowledge that such a letter from Shuster would arrive.  Second, the uncontested facts reveal that Shuster would not have even issued her "official letter" if Achenbach did not take the initiative to contact Shuster after receiving Meehan's August 18, 2003 fax indicating that Plaintiff's internship certificate had lapsed and that exceptional circumstances did not exist for an emergency permit.  In fact, Achenbach, to the best of his knowledge had received "official notice" from the PDE addressing the validity of Plaintiff's certificate on August 18, 2003.  Believing that he just received confirmation from the PDE that Plaintiff's teaching certificate had lapsed and that the application for an emergency certificate had been denied, we find that Achenbach acted as any reasonable school administrator would in instructing Monaghan to inform Plaintiff that he would have to either resign or be terminated because he would not be certified at the beginning of the school year.  It is an entirely logical and fair assumption that no reasonable school administrator would want to knowingly subject his school to a forfeiture penalty for permitting an

uncertified teacher to teach.[2]

As accurately noted by Defendants, it is uncontested that Plaintiff's Intern Certificate lapsed on July 31, 2003.  Nor does Plaintiff refute Meehan's deposition testimony that indicated Plaintiff's certificate had lapsed based upon the materials Achenbach sent to him on August 15, 2003.  Accordingly, viewing the facts in the light most favorable to Plaintiff, as of August 1, 2003, Plaintiff lost any property interest in his ongoing employment.  On August 18, 2003, after receiving a letter from Meehan, Director of Bureau of Teacher Certification and Preparation, addressing the invalidity of Plaintiff's Intern Certificate, the I.U. acted in accordance with the law and told Plaintiff that he could either resign or he would be terminated.[3]  As elaborated upon in Occhipinti, Moiles, and Savage, once a teacher

───────────────

[2] Plaintiff additionally asserts that Defendants are somehow liable because they failed to tell Plaintiff about his right to appeal the PDE's denial of his emergency permit based upon exceptional circumstances to a PDE appeal board.  We are in agreement with Defendants that this argument lacks merit both factually and legally as it is uncontested that Plaintiff himself had several conversations with the PDE, and with Shuster in particular, about the circumstances surrounding his case and the options available to him immediately after he was allegedly forced to resign.  Plaintiff's attempt to impute liability to Defendants on the basis of actions or advice of the PDE is inappropriate.

[3] We note that Plaintiff alleges in his amended complaint that his resignation was "forced" because Monaghan demanded that Plaintiff decide within a period of approximately three and one-half hours (11:30 a.m. to 3:00 p.m.) whether to submit a letter of resignation or to be terminated and allegedly lose all course credits that he had earned toward his teaching degree.  Even viewing all facts in the light most favorable to the nonmoving party, Plaintiff, we are in agreement with Defendants that evidence gathered during discovery demonstrates that Plaintiff had more than a couple of hours to decide whether to submit a letter of resignation or choose to be terminated.  Consider, for example, that Plaintiff's union president, Demyanovich, testified in accordance with his own handwritten notes

permits his teaching certificate to lapse, a school entity can discharge that teacher

without a hearing.  Since Plaintiff had no property interest in his continued

employment on August 20, 2003, Plaintiff's procedural due process claims must be

dismissed.  Stated another way, we find that Plaintiff fails the threshold inquiry of

the due process analysis in that he cannot demonstrate a constitutionally protected

property interest.  See Moiles, 2002 WL 1964393 at *7.  Accordingly, Defendants'

Motion is granted with respect to Plaintiff's procedural due process claims.

Assuming, arguendo that we did not dismiss Plaintiff's procedural due

process claims because he was not deprived of a constitutionally protected

property interest, Plaintiff's procedural due process claims would nonetheless fail

as Plaintiff relinquished any property interest in continued employment when he

resigned his teaching position.  In that regard, in Leheny v. City of Pittsburgh, 183

F.3d 220, 227-28 (3d Cir. 1999), the Third Circuit Court of Appeals stated as

follows:

> Employee resignations and retirements are presumed to be voluntary.
> See Angarita v. St. Lousi County, 981 F.2d 1537, 1544 (8th Cir. 1992).

---

that he discussed the issue of submitting a letter of resignation with Plaintiff on August 19, 2003 and
informed him not to do it.  Moreover, the testimony of Demyanovich demonstrates that Plaintiff's union
was aware of the certification issue as far back as August 13, 2003 wherein George Zweibel, the
Union's chief negotiator, suggested to Demyanovich that Plaintiff submit a letter of resignation.  In
addition, Atkinson testified that he had conversations with Plaintiff about signing letters of resignation
either on or prior to August 20, 2003.

This presumption remains intact until the employee presents evidence to establish that the resignation or retirement was involuntarily procured. Id. If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights. See Hargray v. City of Hallendale, 57 F.3d 1560, 1567 (11th Cir. 1995); Stone v. Univ. of Md. Medical Sys. Corp., 855 F.2d 167, 173 (4th Cir. 1988). There appear to be two circumstances in which an employee's resignation or retirement will be deemed involuntary for due process purposes: (1) when the employer forces the resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee. See Hargray, 57 F.3d at 1568.

Moreover, to determine whether a resignation is involuntary, the court must look at all surrounding circumstances. O'Connell v. County of Northampton, 79 F. Supp. 2d 529 (E.D. Pa. 1999). Specifically, courts look to the following factors in determining whether a resignation was forced: (1) whether the employee was presented with an alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee has a reasonable time to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel. Hargray, 57 F.3d at 1568; O'Connell, 79 F. Supp. 2d at 533; Angarita, 981 F.2d at 1544-45 (finding employee police officers involuntarily resigned where, among other factors, employer did not let them leave room before signing resignation

22

letter, requests to speak to supervisors were denied, and threats of disclosure to family members were made).

In the case sub judice, the uncontested facts demonstrate that Plaintiff's decision to resign was done on his own accord.  It is undisputed that Plaintiff was presented with the option of either resigning or facing termination by the I.U. Board because he permitted his teaching certificate to lapse.  As previously noted, although Plaintiff attempts to argue that his resignation was "forced" because he was only provided with approximately a three and one-half hour period to reach a decision, evidence gathered during discovery demonstrates that Plaintiff had a longer period of time within which to decide whether to resign or to face termination.[4]  Moreover, it is important to note that Plaintiff could have rescinded his letter of resignation up until the time the I.U. Board accepted it.  In that regard, Plaintiff admits that he was informed of this by either his union president or the union lawyer.  (Coreia Dep. 111:12-15, 112:1-3).  Accordingly, we find that as Plaintiff voluntarily resigned his teaching position, he relinquished his property interest in continued employment.  Plaintiff's procedural due process claims fail as

---

[4] In addition, Plaintiff has not produced any evidence, apart from his own testimony, to support the notion that he only learned about the certification issue and need to either resign or to be terminated at approximately noon on August 20, 2003.  As noted, it appears that Plaintiff was in a position to view the gathering storm and focus on this admittedly Hobson's choice at least several days prior to August 20, 2003.

a matter of law.[5]

## B.  Breach of Contract Claim

In Count VII of Plaintiff's amended complaint, he seeks to recover based upon an alleged breach of contract.  In the Motion, Defendants argue that Count VII should be dismissed as a matter of law because Defendants did not breach any duty imposed by the contract.  In response, Plaintiff asserts that the employment contract entered into between Plaintiff and Defendants has been breached.  "Page five (5) of the contract at issue clearly places the important topic of teacher certification under complete control of the Pennsylvania Department of Education, not in the hands of the Defendants.  The Defendants acted entirely outside of their authority in stripping Plaintiff of his job due to an alleged certification issue."  (Pl.'s Br. Opp. Defs.' Mot. Summ. J. at 15).

In Pennsylvania, to plead a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid and binding contract; (2) the contract's essential terms; (3) that he complied with the contract's terms; (4) that the defendant breached a duty imposed by the contract; and (5) damages resulting from the breach.  Gundlach v. Reinstein, 924 F.Supp. 684, 688 (E.D. Pa. 1996), aff'd, 114

---

[5] We need not address whether the procedures available provided Plaintiff with due process as we found that Plaintiff was not deprived of a constitutionally protected property interest.

24

F.3d 1172 (3d Cir. 1997).

For purposes of this Motion, Defendants submit that Plaintiff could establish the existence of a contract between the parties with its essential terms, as well as resultant damages; however, Defendants argue that the evidence conclusively establishes that they did not breach any duty imposed by the contract entered into by the Schuylkill Intermediate Unit 29 Board of Education ("Board") and the Schuylkill County AVTS Educational Association ("Union").

After a careful review of the record and applicable case law and viewing the evidence in the light most favorable to Plaintiff, we find that Defendants did not breach any duty imposed by the contract entered into by the Board and the Union, for the reasons that follow.

The record reveals that Defendants acted in accordance with the negotiated contract.  As stated in the contract, "all full-time professional employees in the secondary program must meet the requirements for professional certification as set forth by the Pennsylvania Department of Education."  (Rec. Doc. 42, Defs.' Ex. 15).  Defendants never unilaterally decided that Plaintiff failed to meet the necessary requirements for professional certification.  Instead, it is uncontested that even though Plaintiff's teaching certificate lapsed on July 31, 2003, Defendants did not take any action regarding Plaintiff's employment until the PDE addressed the

validity of Plaintiff's teaching certificate on August 18, 2003.  At that time, Plaintiff,
as determined by the PDE and as required by the contract, breached the terms of
the contract when he failed to maintain his proper teaching certification.  We
therefore are in agreement with Defendants that Plaintiff, as opposed to Defendants,
breached the terms of the contract.  Accordingly, Defendants' Motion is granted
with respect to Plaintiff's breach of contract claim.

### C.    Statutory Due Process Claim

In Count VIII of Plaintiff's amended complaint, Plaintiff asserts that
Defendants violated provisions of the Pennsylvania School Code, that he was
denied procedural safeguards in the form of a due process hearing, and that he was
given no opportunity to be heard in a meaningful way either prior or subsequent to
his termination.

We are in agreement with Defendants that case law supports the fact that
Plaintiff does not have a valid cause of action to pursue alleged violations of the
Pennsylvania School Code.  In that regard, in Lindsey v. Thomas, 465 A.2d 122
(Pa. Cmwlth. 1983), the Pennsylvania Commonwealth Court specifically addressed
the issue of whether a plaintiff has a private right of action for damages under the
Pennsylvania School Code.  In Lindsey, the plaintiffs sought damages from the
defendant school district based upon alleged violations of §§ 1371 and 1372 of the

Public School Code (24 P.S. §§ 13-1371-13-1372).  Id. at 123.  The

Commonwealth Court rejected plaintiffs' argument that a private right of action

exists under the Pennsylvania School Code and stated, "There is, however, no

statutory provision whatsoever for a monetary remedy arising out of a breach of

these statutory duties."  Id.  As Defendants submit, the Commonwealth Court

reached their conclusion in part by relying upon the United States Supreme Court

case of Touch-Ross & Co. v. Redington, 442 U.S. 560 (1979) which states that a

court's function in determining whether or not a right of action exists pursuant to a

statutory provision is to be determined by the legislative intent.  In Lindsey, the

Commonwealth Court, applying the principle of Touch-Ross, refused to imply a

private right of action because it could not find any legislative intent supporting

such an act.

     In addition, more recently, in Whipple v. Warren County Sch. Dist., 133 F.

Supp. 2d 381 (W.D. Pa. 2000), the plaintiff sought to recover damages under 22

Pa. Code §§ 12.6-12.8 and 14.35.  Judge McLaughlin relied on the Commonwealth

Court's rationale in Lindsey in reaching the conclusion that the legislative intent of

the Pennsylvania School Code did not include permitting an independent cause of

action for money damages.  Id. at 383.  As in Lindsey, the Court indicated that

other causes of action were available to the plaintiff to pursue his claims if he so

desired.  Id.

Although Plaintiff argues that the "unilateral" termination of Plaintiff usurped the authority of the PDE and that Defendants' conduct violated specific provisions of the Pennsylvania School Code, Plaintiff has not directed the Court to a particular provision of the state regulations which would permit a private cause of action and we find nothing which sets forth an independent cause of action for money damages for violations of the Pennsylvania School Code.  Accordingly, we find that as did the courts in Lindsey and Whipple, no private right of action exists for alleged violations of the Pennsylvania School Code.[6]  Plaintiff's statutory due process claims are therefore dismissed.

### D.    Punitive Damages Claim

In Count V of Plaintiff's amended complaint, Plaintiff seeks to recover punitive damages against Defendants.  In that regard, Plaintiff states that "[t]he acts complained for herein were done intentionally, knowingly, willfully, unlawfully, maliciously, in bad faith and in wanton disregard o the rights and feelings of the Plaintiff."  (Am. Comp. ¶ 49).

---

[6] We do note that assuming arguendo that Plaintiff can recover damages pursuant to an alleged violation of the Pennsylvania School Code, Defendants have complied with all statutory requirements in the case sub judice, as previously noted.  The record reveals that both through documents submitted to the PDE and through the deposition of Meehan, the I.U. complied with the mandated requirements of the PDE.

In our September 16, 2005 Order, we dismissed Plaintiff's claim for punitive damages against the I.U. and against Defendants Achenbach and Monaghan in their official capacity.  (Rec. Doc. 29 at 20-24).  Plaintiff's surviving claims for punitive damages against Defendants Achenbach and Monaghan in their individual capacity should be dismissed as well, for the reasons that follow.

As the United States District Court for the Eastern District of Pennsylvania ha stated, punitive damages against an individual, in their official capacity, are only available when the plaintiff can "establish facts of record that prove that the individual knowingly and maliciously deprived plaintiffs of their civil rights."  Ruiz v. Philadelphia Hous. Auth., 1998 WL 159038, at *10 (E.D. Pa. 1998).  The Third Circuit Court of Appeals has instructed that for a plaintiff in a § 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous.  Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989); Smith v. Wade, 461 U.S. 30, 56 (1983).

As we have explained in this Memorandum and Order, the actions of both Achenbach and Monaghan were not reckless, callous, or knowingly and maliciously intended to deprive Plaintiff of his civil rights.  Even if we were to find that Achenbach or Monaghan expressed information that may have been wrong to Plaintiff, Plaintiff has failed to demonstrate that Defendants conveyed such

misinformation knowingly and intentionally.  Instead, even after Plaintiff was allegedly forced to resign, Defendants continued to question the PDE as to their determination of Plaintiff's certificate and denial of emergency permit. Accordingly, Plaintiff's claims for punitive damages against Achenbach and Monaghan in their individual capacity are dismissed as a matter of law.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion for Summary Judgment (doc. 40) is GRANTED.

2. The Clerk shall close the file on this case.


S/ John E. Jones III
John E. Jones III
United States District Judge